IN THE UNITED STATES DISTRICT COURT
TUCSON DIVISION OF ARIZONA

Cathy Vitarelli,
    Plaintiff,

Case No. _05cv690-Tuc-CRP_

v.

Jamie Baugher,
    Defendant,
(individual and official capacity)

Janet Lake,
    Defendant,
(individual and official capacity)

**FRAUD**
**CONSPIRACY/OBSTRUCTION OF JUSTICE**

PETITION IN THE NATURE OF A SUIT FOR DEPRIVATION
OF FEDERALLY PROTECTED RIGHTS TITLE 42 USC 1983, 1981, 1985, 1988, TITLE 18
USC 241, 242, 1512, FOR INJUNCTIVE AND DECLARATORY RELIEF AND OTHER
DAMAGES AS THE COURT SHALL DETERMINE REASONABLE, LAWFUL, AND JUST

COMES NOW, I, Cathy Vitarelli, Pro se and Mother of Jeremiah Bays, sovereign,

aggrieved party, and past victim of child stealing from Defendants, Petitions this court to find the

Defendant(s) GUILTY of CONSPIRACY TO COMMIT FRAUD, PERJURY, FRAUD, and/or

FRAUD ON THE GOVERNMENT, STATE AND FEDERAL, under authority of Title 42 USC

and Title 18, for deprivation of federally protected rights reserved under the Bill of Rights, The

declaration of Independence and of the United States Constitutional Amendments One, Four,

Five and Seven and/or from the Federalist Papers including United States Amendment Fourteen

and the common law authorities. Argersinger v. Hamlin, 407 U.S. 25 (1972), Walker v. McLain,

768 F.2d 1181 (10th Cir. 1985), Lassiter v. Department of Social Services of Durham County,

452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. "Fraud upon the court confers equitable jurisdiction on

a court to set aside a judgment unsuccessful party has been prevented from exhibiting fully his

case, by fraud, or deceit by keeping him away from court", Ref. Mandonado-Denis v. Castillo-

Rodriguez, 23 F3d 576 (1st Cir. 1994), "Inadequate training of subordinates may be basis for

1

1983 claim." "However, merely going along with the discretionary decision made by

subordinates is not a delegation to them... Praprotnik, 485 U.S. 112, 127 (1988). Ref.

Castellano v. Fragozo, No. 00-50591 (5th Cir. November 20, 2002), "2) a conspiracy existed to

deprive claimant of his Seventh Amendment rights.

In Suits at common law, where the value in controversy shall exceed twenty
dollars, the right of trial by jury shall be preserved, and no fact tried by a
jury, shall be otherwise re-examined in any Court of the United States, than
according to the rules of the common law.

That also Title 42 U.S. C. Section 1983 (Civil Rights suits) occupies a unique place in

jurisprudence, in that, . .

"Each citizen acts as a private attorney general who 'takes on the mantel
of sovereign', [citation omitted] guarding for all of us the individual
liberties enunciated in the Constitution. Section 1983 represents a balancing
feature in our government structure whereby individual citizens are encouraged
to police those who are charged with policing us all. Thus it is of special import
that suits brought under this statute be resolved by a determination of the truth
rather than by a determination that the truth shall remain hidden."
Wood v. Breier, 54 F.R.D. 7, 10-11 (E.D. Wis 1972).
Accord Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973).

**COUNT 1:**

1. The Defendant Janet Lake, did not provide proper service of documents from the

"Temporary Custody Notice", on April 21, 2004. The Defendant Janet Lake, did mislead and/or

lied to the court several times including, "No caregiver is present and the child cannot care for

himself or herself or for other children in the household." When the parent Plaintiff was available

to receive the child and offered plane ticket(s) to return to Florida. Guardianship by "Power of

Attorney" was signed February 19, 2004, and Notarized on March 4, 2004. Plaintiff's belief is

through discovery and subpoena power these allegations and/or other allegations will prove to be

true and reserves the right to amend the petition.

**COUNT 2:**

2. The Defendant Jami Baugher, did not provide proper service of documents including all

case plans. Forged signatures on the June 6, 2005, case plan. Lied and/or mislead the court many

times through court hearings. Mislead the court in an Report dated June 17, 2005, J#130245.

2

Defendant'sViolated Plaintiff's rights in free speech to her child to share religious beliefs with child. Defendant mislead the court in the first I.C.P.C. and others there after. Plaintiff's belief is through discovery and subpoena power these allegations and/or other allegations will prove to be true and reserves the right to amend the petition.

3. While a private citizen cannot ordinarily be held liable under 1983 because that statute requires action under color of state law, if a private citizen conspires with a state actor, then the private citizen is subject to 1983 liability. Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2001) quoting Bowman v. City of Franklin, 980 F. 2d 1104, 1107 (7th Cir. 1992) "To establish 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1, a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998). The TRUTH that Defendants now Jamie Baugher, and Janet Lake, submitted fraudulent documents to the Arizona State courts involving Cathy Vitarelli's son Jeremiah Bays. The Defendant(s) conspired with many actors including Judge Rubin, to defraud Arizona State court to Order custody of a child that wanted to go home and even the child's attorney has advocated for his release. The Defendant(s) defrauded the Arizona State Government, the United States Government of federal money, and an agenda from day one of the Apple and has conspired with multiple state actors/agents through to many months. Still no return of Plaintiff's son after the last court hearing of September 29, 2005, and mother has filled all request and then some.

Reference:

# Child welfare costing taxpayers millions
**Average cost per child is $14,855**
Sunday, October 2, 2005
By ELAINE HOPKINS
of the Journal Star

PEORIA -The child protection system in Peoria and Tazewell counties costs taxpayers millions each year - the exact number is unknown. The total may be $25 million yearly, or more, when

the cost of every part of the complex system is included.

According to information from the Illinois Department of Children and Family Services, based on a Freedom of Information request, the average cost per year per child in the system is $14,855 to pay agencies and foster parents.

That figure does not include medical care, counseling or court proceedings, the agency stated.

After a week of requests, DCFS was not able to provide an official to speak about the agency, saying key leaders were not available.

As of Aug. 5, there were 607 children in nonrelative foster care in Peoria and Tazewell counties. DCFS did not provide the number of children in foster care staying with relatives. At the average cost, that's S9 million a year paid to agencies and foster parents for these children.

Last year, an additional $9.3 million went to families to subsidize the adoption of children whose parents lost their parental rights in the two counties.

Six private agencies in 2004 operating in the two counties had contracts totaling $82 million for all programs they run for DCFS. Some operate statewide, others only locally.

This money goes to protect children, roughly half of whom are removed from their homes even though they have not been harmed physically.

DCFS says that of 173 children taken into protective custody last year in Peoria and Tazewell counties, 53 percent in each county were taken for **risk of harm** instead of actual harm.

Family advocates criticize child welfare officials as being too zealous in some instances, though they believe the system has improved lately.

In 2000, Mary Hixenbaugh of Peoria was a founder of Keeping Families Together, one of three local family advocacy groups now keeping watch over DCFS and the court system.

After five years of meetings with DCFS officials, some progress has occurred, Hixenbaugh said.

"We got rid of caseworkers that were problem-makers, and an investigator who was sexually harassing clients," she said. A difficult top administrator also left.

Her analysis of what went wrong with the system focuses on money. Financial incentives for adoption, approved by Congress in the 1990s, **ruined the system**, Hixenbaugh said. "It went haywire."

With money on the table, **agencies expanded definitions of abuse and neglect**, she said. "**They were snatching kids.** The system backlogged."

For example, mothers who were victims of domestic violence lost their children to the system even though the children were never abused by either partner. That's still happening, Hixenbaugh said.

The domestic violence issue illustrates the complexities facing those involved in the child protection system.

Police and others are required to notify child protection authorities of domestic violence. They reason that mothers who allow their children, including infants, to witness domestic violence or be near it place them in danger.

Then some unintended consequences kicked in.

"The word is out," said Jim Ryman, a member of Keeping Families Together. Women are now afraid to call the police, he said.

"They would rather take the beating to keep the police out of the home," Hixenbaugh said.

Martha Herm, executive director of the Center for Prevention of Abuse, said, "we have anecdotal evidence from people calling the hotline (who say) 'I don't want to call the police. I'm too afraid of losing my kids.' "

Herm said every situation is complicated, but in general abusers are unlikely to change without therapy.

"Research shows it gets more severe and the violent parts happen more often over time," she said.

Judges err on the side of caution, even though they know taking a child away from parents is traumatic, she said.

"An atmosphere of abuse is not good for children," said a senior public defender, Louis Milot.

But some women need a long time to realize that they must separate themselves from an abuser, he said. "What is the best way to encourage a victim to do that?" he asked.

## By the numbers
Sunday, October 2, 2005

- Estimated annual cost of the child protection system in Peoria and Tazewell counties: $25 million.

- Paid to families for adoption assistance: $9.3 million.

- Paid to private agencies and foster parents for 607 children in foster care, at average yearly cost of $14,855: $9 million

- Cost for medical care, counseling, other services: unknown.

- Cost for eight court-appointed lawyers in Peoria County: about $300,000.

- Cost of prosecutors and judges: unknown.

- Number of children taken into protective custody last year by DCFS in Peoria and Tazewell counties: 173.

- Percentage not harmed but considered at risk for harm, in each county: 53 percent.

- Number of private agencies contracted to work with DCFS last year in both counties: six.

- Total amount paid to them: $82 million, though some do work in other counties (also, the agencies provide other services besides foster care).

- Number of complaints DCFS received on these six agencies last year: 114.

- Percent of African-American children in Peoria County: 25 percent.

- Percent of black children in nonrelative foster care in Peoria County in Aug: 63 percent.

- Percent of African-American children in Tazewell County: 0.5 percent.

- Percent in nonrelative foster care in Peoria County in August: 25 percent.

- Estimated percent of poor families in the child protection system: 90 percent.

Sources: Illinois Department of Children and Family Services, court officials.

# Operating DCFS

Sunday, October 2, 2005

Here is the way the child protection system of the Illinois Department of Children and Family Services and the court system that supports it should operate, according to Illinois law and family advocates:

1. Child is removed from the home.

2. Within 48 hours, a shelter care hearing must be held before a judge to determine where the child will be placed.

3. Within 90 days, an adjudication hearing, the trial, should be held. If the judge finds abuse or neglect, more decisions about what happens to the child and parents are made. A one-time 30-day extension can be granted.

4. Within 30 more days, a disposition hearing should be held. Advocates say that unless severe abuse is present, children should be sent home with services to the parent.

Sources: Illinois Bar Association, Keeping Families Together.

# Advocates say parents rights are lacking

Sunday, October 2, 2005
By ELAINE HOPKINS
of the Journal Star

PEORIA - Ask the family advocates about the court system that backs up the Illinois Department of Children and Family Services, and you'll get an earful.

The system is overloaded, they say. It can take six months to get a court date. The average case lasts two years.

Due process is sacrificed along with justice, running up other costs in the system and traumatizing children and families, they say.

"Parents have far fewer rights than criminals," said activist Doris Morgan of the advocacy group Keeping Families Together. "But what is decided is your child's future."

Most cases should be finalized within two months instead of two years, Morgan said, unless there is obvious physical or sexual abuse.

"If you kill somebody, you get better (legal) representation," said Laurie Yaeger of Keeping Families Together.

County officials don't know what the court part of the local child protection system costs.

"It would be very difficult to determine," said John Flynn, Peoria County's court administrator.

The cost of juvenile court services is lumped into other costs, said Jennifer Zinkel of Peoria County's administrative services office.

Every case involves at least three lawyers, sometimes more, and a judge.

The county has a contract with lawyer Tim Penn to provide public defender services for all court cases. Penn did not respond to a request for comment.

Five public defenders represent the parents. All are independent contractors with no benefits. They are paid $3,000 monthly plus $400 to file appeals. Three other lawyers represent the children.

With heavy caseloads, the lawyers waive time deadlines for their own convenience, and parents don't even realize it, the advocates say. The cases drag on.

Flynn said, "some of the delays are attributable to making sure (all) parties are properly notified."

No one has studied the local system to see whether it could be more efficient, he added.

DCFS and the courts are sometimes at odds, advocates say.

Latonya Harris' seven children, ages 5 to 14, have been in the system since 1999 because she was accused of spanking a 5-year-old, she said. But the criminal charge against her was dismissed, she said.

Harris said DCFS wants her children returned, but a judge won't agree. "He wasn't paying attention" to the case, she said. "When I try to talk to the judge, he does not respond to me."

The siblings are separated in several foster homes, she said.

Morgan said children in the system for a long time may develop "reactive detachment syndrome," which means they have lost the ability to bond with anyone. She told of a boy who spent his childhood in 11 foster homes over four years.

DCFS paid for his intensive, live-in therapy to recover, before he could go home to his mother, she said.

Louis Milot, a senior public defender who represents parents in the system, said, "I don't think enough time and effort has been spent to determine why people are coming into the system and what can be done to prevent that."

State Rep. Mary Flowers, a Chicago Democrat who spoke at a recent Peoria meeting of the advocacy group Family Does Matter, said public defenders should be paid more, and more need to be hired to cut caseloads.

Milot said his job is supposed to be part time, but his caseload of about 150 cases can be overwhelming. He would rather see a cut in caseload than a raise, he said.

Flowers also would consider legislation to remove immunity from civil lawsuits for those involved in the system, she said, to promote more checks and balances and interest private lawyers in taking child protection cases.

"Your child can be taken away (in court) because of hearsay," she said, but not "your dog or your car."

In Peoria County, a DCFS grant-funded pilot program called Family to Family aims to cut back on children being removed from their homes by setting up team meetings before court hearings take place.

Bessie Rush, who operates the program, said it began in 2001 when Peoria County was second in the state behind Chicago in removing children from their homes. "They were taking up to 500 children a year," she said.

That's been cut to 153 last year, according to DCFS figures.

Dozens of community volunteers now work with families in the system, she said to keep children in their homes or reunite them with families.

"It's made a great difference," said Mary Hixenbaugh of Keeping Families Together. She wants the program expanded to Tazewell County.

But the court system can and does overrule the decisions made at the team meetings, she said.

Crystal Clark, of the group African American Children and Family Rights Enforcement, said the system isn't working as planned. "I've got a list of people who say the (team meetings) were held after their kids were removed," she said.

Parents who can't or won't follow intricate rules that are sometimes unreasonable lose their children permanently, Hixenbaugh said.

She and others in her group tell stories of distraught parents whose parental rights were being terminated because they didn't show up at a 9 a.m. court hearing, even though the paperwork said the hearing was at **1 p.m.**

Or because they missed a required meeting due to serious illness.

Becky Brown with Keeping Families Together said the overall system has improved somewhat but needs more improvement.

"It's not perfect yet," she said.

# Area groups calling for DCFS policy changes

**Critics question how child welfare deals with minorities and poor**
Sunday, October 2, 2005
By ELAINE HOPKINS
of the Journal Star

PEORIA - On a stifling July day, a woman and her father picketed the Peoria office of the Illinois Department of Children and Family Services. Their sunburned faces dripped with sweat.

The woman's sign read: "DCFS will lie in court to keep your child for money." Passing cars honked in sympathy.

A black female pedestrian in front of the office commented, "Ain't that the truth," and kept walking.

On the same day, Crystal Clark and a small group of African-Americans stopped by the office of Peoria County State's Attorney Kevin Lyons. They wanted to present a petition to Lyons that they said had hundreds of signatures and discuss their grievances about the child protection system in Peoria.

They waited an hour, but no one would take their petition or speak with them.

Later they mailed the petition to Lyons but never heard from the office, Clark said.

Clark, 48, an African-American, said the system oppresses poor people and especially black parents and foster parents. Local officials ignore both DCFS policies and state laws, she claims.

Since that hot day, Clark's group, African-American Children and Family Rights Enforcement, and two other groups, all with leaders who have been involved with the child protection system, continue to meet and protest. The leaders don't get along, but their complaints about the system are the same.

Grass-roots groups are not alone in their concerns. Bamani Obadele, a high-profile black minister and Chicago activist who recently left DCFS after overseeing minority affairs for two years, said the agency has improved but the system still has problems, especially in the Peoria area.

"It's a class issue. Poor whites and poor blacks don't stand a chance," said Obadele, who left DCFS to pursue other interests but is now under investigation by the agency for financial irregularities, the Chicago Tribune reported Saturday.

"I don't believe the system itself is racist," but most of the cases involve minorities, he said. "Why is that? Is it that black people love their children less? I think we need a real discussion about the face of child welfare."

State Rep. Mary Flowers, a Chicago Democrat, has introduced reform legislation for the child protection system. Illinois has one of the worst records in the United States for using family reunification funds to keep families together, she said.

"A lot of children are separated from their families because their families are poor," she said.

The statistics show African-American children making up only 25 percent of the children in Peoria County but 63 percent of the foster children not in the care of relatives, according to DCFS figures.

In Tazewell County, fewer than 1 percent of children are black, but black children make up 25 percent of the foster children not in the care of relatives.

Only 19 percent of all children are from poor families in Peoria County, and 10 percent in Tazewell County. But most of the children and parents caught up in the child welfare system are poor. Court officials estimate the poor make up 90 percent of the cases.

Crystal Clark has asked the FBI to investigate civil rights violations in the Peoria system and recently urged U.S. Rep. Ray LaHood, R-Peoria, to push them to do it. She's also spoken with a Chicago lawyer about a class-action lawsuit.

Recently, Clark and her group picketed at the Pekin office of state Sen. George Shadid and state Rep. Mike Smith. They want Shadid to call a public hearing with sworn testimony from people upset with the child protection system.

Shadid was out of town, his aide Peggy Meisinger said, adding she has presented material to Clark on how the group can set up its own hearing.

Several Pekin residents stopped to talk with the group and expressed sympathy with its cause.

Clark became involved after her two grandchildren were taken from the home she shared with her daughter and the children, two years ago.

The children were never harmed, she said, but were taken in retaliation because she complained about a caseworker with a private agency who entered her home without knocking and stole videotapes.

The children then were abused in four foster homes, including one that the city of Peoria found unfit for human habitation, Clark said, offering documents as proof.

Last year DCFS found that eight foster parents committed abuse in the two counties. Sixteen children were affected.

Clark's grandchildren then were placed on a farm with white foster parents in Peoria County, far from other family members, their African-American culture and their community, Clark said.

DCFS statistics show 17 percent of African-American children were placed in white foster parent homes in August in Peoria County. Last spring the agency conducted a campaign to recruit black foster parents but could not supply any figures on how many were recruited.

Clark said she surrendered the children because police were present. But she later learned that no court order had been issued or independent investigation done concerning the removal of her grandchildren.

A week ago Clark and her group met with 1st District Councilman Clyde Gulley to complain

10

about police involvement with DCFS. Gulley said he will look into the allegations.

Clark has questioned the role of Peoria police in backing up caseworkers who are removing children from homes and schools. Sometimes, she says, without a court order or the threat of imminent harm as the law requires. People are intimidated into surrendering the children because of police presence, she said.

DCFS statistics indicate the paperwork usually is in place. It reported that last year all but two cases had the proper paperwork in Peoria County, and all had the documents in Tazewell County.

The leader of another group, Gerisa Eppinger, an African-American, also raised the police issue at a recent meeting where two Peoria police officers were present. Eppinger's group is called Family Does Matter.

People who question surrendering a child are threatened with arrest, Eppinger said. "The only reason for police to be there is intimidation," she added.

But the two officers defended the police presence. Peoria police Lt. Philip Korem said the officers are present as peacekeepers.

His colleague Capt. Mike Scally said "if the DCFS calls and says they're needed, I don't see that as intimidating. These are situations that can be volatile."

Flowers said Illinois is seeing the negative fallout from previous years when too many children were taken from their families and placed in foster homes, **leaving some children angry and traumatized.**

When they become adults, "they are incarcerated," she said. **"It's a horrific thing the DCFS has done to destroy families.**

(GOVERNMENT CODE SECTION 820-823 )

820.21. (a) Notwithstanding any other provision of the law, the civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate or conduct investigations or proceedings pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions

Code shall not extend to any of the following, if committed with malice:

(1) Perjury.

(2) Fabrication of evidence.

(3) Failure to disclose known exculpatory evidence.

(4) Obtaining testimony by duress, as defined in Section 1569 of the Civil Code, fraud, as defined in either Section 1572 or Section 1573 of the Civil Code, or undue influence, as defined in Section 1575 of the Civil Code.

(b) As used in this section, "malice" means conduct that is intended by the person described in

subdivision (a) to cause injury to the plaintiff or despicable conduct that is carried on by the person described in subdivision (a) with a willful and conscious disregard of the rights or safety of others.

First Amendment Free Speech Clause self counsel litigants' court submissions are to be construed liberally and held to less stringent standards than submissions of lawyers. If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with rule requirements. Boag v. MacDougall, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)(quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); McDowell v. Delaware State Police, 88 F.3d 188, 189 (3rd Cir. 1996); United States v. Day, 969 F.2d 39, 42 (3rd Cir. 1992)(holding pro se petition cannot be held to same standard as pleadings drafted by attorneys); Then v. I.N.S., 58 F.Supp.2d 422, 429 (D.N.J. 1999).

Section 65 - False Affidavits.

Any person willfully making a false affidavit as to the value of any such real estate shall be guilty of perjury and punished accordingly. Any officer administering or accepting such affidavit knowing it to be false, shall be guilty of the felony of subornation of perjury and punished accordingly.

The record shall be made up from the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court; but if the items of an account, or the copies of papers attached to the pleadings be voluminous, the court may order the record to be made by abbreviating the same, or inserting a pertinent description thereof, or by omitting them entirely. Evidence must not be recorded.

4. This said case against Defendants is within reach of 42,18 U.S.C. and fully liable under doctrine established and sustained under Bevens v. Ste Unknown Named Agents of Fed. Bureau of Narcotics, 91 S. Ct. 1999 (1971). Vector Research v. Howard & Howard P.C. 76 P. 3d 692, 698(6th Cir 1996) and also Hammons v. Norfolk S. Corp., 156 F 3d 701, 707 (6th Cir. 1998).

5. That an "CONSPIRACY" and / or "FRAUD" exist by Defendants, CASTELLANO v. FRAGOZO, No. 00-50591 ( 5th Cir. November 20, 2002) "a conspiracy existed to deprive claimant of his Fourth Amendment rights." PICKING v. PENNSYLVANIA R.Co., 151 Fed. 2nd 240; Pucket v. Cox 456 2nd 233. "Pro se pleadings are to be considered without regard to technically; pro se litigants pleadings are not to be held to same high standards of perfection as lawyers."

6. U.S. v. GAUDIN, 28 F.3d 943,951 (9th Cir. 1994) The trail judge's refusal to submit the

question of "materiality" to the jury was unconstitutional.

7. U.S. v. UCHIMURA, No 94-10579 (9th Cir. 1994) It is a fraud to conceal a fraud {Fraus

est celare fraudem}U.S. v. OREN , 893 F.2d 1057, 1062 (9th Cir. 1990) " one defrauds another

when he causes him to be " deprived [d]... of property by means of false...representations"

BLANTON v.SHERMAN COMPRESS CO..,256 S.W. 2d 884 (1953). Vide: 15 U.S.C. Sec

687f(c) When a person sustains to another a position of trust and confidence, his failure to

disclose facts that he/she has a duty to disclose is as much a fraud as an actual

misrepresentation..TOSCANO v. CIR, 441F.2d 930, 933 ( 9th Cir 1971) When we conclude that

the integrity of the judicial process has been harmed, however, and the fraud rises to level of

unconscionable plan or scheme which is designed to improperly influence the courts in its

decisions," we not only can act, we should.

United States Code
TITLE 18 - CRIMES AND CRIMINAL PROCEDURE
PART 1 - CRIMES

CHAPTER 13- CIVIL RIGHTS

Section 241. Conspiracy against rights
　　　　If two or more persons conspire to injure, oppress, threaten, or intimidate any person in
any State Territory, Common wealth Possession, or District in the free exercise of enjoyment of
any right or privilege secured to him by the constitution or laws of the United States, or because
of his having so exercise the same; or
　　　　If two or more person go in disguise on the highway, or on the premises of another , with
intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured-
　　　　They shall be fined under this title or imprisoned not more than ten years, or both; and if
death results from the acts committed in violation of this section or if such acts include
kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to kill they shall be
fined under this title or imprisoned for any term of year or for life of may be sentenced to death..

United States Code
　TITLE 42 - THE PUBLIC HEALTH AND WELFARE
CHAPTER 21 - CIVIL RIGHTS
SUBCHAPTER I - GENERALLY

Section 242. Deprivation of rights under color of law
Who ever, under color of any law, statute , ordinance , regulation, or custom, willfully subjects
any person in the State Territory Commonwealth Possession, or District to the deprivation of the
right privilege or immunities secured or protected by the Constitution of the Law of the U.S. or
different punishment , pain, penalties, an account of such persons being an alien, or by reason of
color, or race than are prescribed for the punishment of citizens shall be fined under this title or
imprisoned not more than a 1yr or both; and if bodily injury results from the acts committed in

violation of this section or if attempted use, or threatened use of a dangerous weapon, explosives, or fire shall be fined under this title or imprisoned not more then 10 yrs or both if death results from the act committed in violation of this section or if such acts include kidnapping, or an attempt to kidnap, aggravated sexual abuse or an attempt to kill shall be fined under any terms of year or for life, or may be sentenced to death.

United States Code
   TITLE 42- THE PUBLIC HEALTH AND WELFARE
     CHAPTER 21 - CIVIL RIGHTS
SUBCHAPTER 1 -GENERALLY

SECTION 1981. Equal rights under the law
(a) Statement of equal rights
   All persons within the jurisdiction of the United States shall have the same rights in every State and Territory Commonwealth Possession, or District to the deprivation of any rights or immunities secured or protected secured to him by the constitution or laws of the United States ,or to different punishments or , penalties , on account of such person being an alien or by rare than are prescribed for the punishment of citizens shall be fined under this title or imprisoned not more then 1 yr or both ; and if bodily injury results from the acts committed in violation of this section or if such act include the use, attempted use or threatened use of a dangerous weapon explosive or fire shall be fined under this title or imprisoned not more the 10 yrs or both; and if death results from the act committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to kill shall be fined under this title or imprisoned for any term of yrs or for life, or may be sentence to death

SECTION 1985. Conspiracy to interfere with civil rights
(1) Preventing officer from performing duties
If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, under the United States, or from discharging any duties thereof; or to induce by like means any officer of
(2) Obstructing justice: intimidating party, witness, or juror
If Two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or
(3) Depriving persons of rights or privileges

SECTION 1988. Proceedings in vindication of civil rights

(a) Applicability of statutory and common law The jurisdiction in civil and criminal matters conferred
(b) Attorney's fees
In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 19
(c) Expert fees
In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981, or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.

## 8. NOTICE OF RIGHTS

States: You have the right to a hearing to determine whether the Order establishing protective custody of your child should be continued or whether your child should be returned to your custody. This hearing is to be conducted within two (2) judicial days (days in which the Court is in session) following the child being taken into custody.

8. States: At a hearing to terminate your parental rights you have the right to a jury trial. The Court must consider termination of your parental rights if your child is not returned home within eighteen (18) months of the removal of the child from your home. At this hearing, the Assistant District Attorney must prove termination of your parental rights is in the best interest of the child by clear and convincing evidence.

9. States: The parent or guardian has the right to testify and present evidence at court

hearings.

3005 - Public Records

The contents of an official record or of a private record authorized to be recorded or filed in the public records and actually recorded or filed, if otherwise admissible, may be proved by a copy in perceivable form, certified as correct in accordance with Section Error! Reference source not found. of this title or testified to be correct by a witness who has compared it with the original. If a copy which complies with this section cannot be obtained by the exercise of reasonable diligence, other evidence of the contents may be admitted.

## 10. SECTION 1512

(B) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with into to

(1) influence, delay, or prevent the testimony of any person in an official proceeding.

(2) cause or induce any person to

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding:

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding:

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings; shall be [guilty of a crime.].

11. Section 1-109 - Privileged and Confidential Nature of Medical Records Communications Between Physician or Psychotherapist and Patient

Multiple Amendments Enacted During the 2004 Legislative Session
Version 1 (as amended by Laws 2004, SB 1578, c. 113, § 3, eff. November 1, 2004)

12. U.S. Code as of: 01/06/03 Section 1031. Major fraud against the United States

(a) Whoever knowingly executes, or attempts to execute, any
scheme or artifice with the intent -

(1) to defraud the United States; or

(2) to obtain money or property by means of false or fraudulent
pretenses, representations, or promises,

in any procurement of property or services as a prime contractor
with the United States or as a subcontractor or supplier on a
contract in which there is a prime contract with the United States,
if the value of the contract, subcontract, or any constituent part
thereof, for such property or services is $1,000,000 or more shall,
subject to the applicability of subsection (c) of this section, be
fined not more than $1,000,000, or imprisoned not more than 10
years, or both.

(b) The fine imposed for an offense under this section may exceed
the maximum otherwise provided by law, if such fine does not exceed
$5,000,000 and -

(1) the gross loss to the Government or the gross gain to a
defendant is $500,000 or greater; or

(2) the offense involves a conscious or reckless risk of
serious personal injury.

(c) The maximum fine imposed upon a defendant for a prosecution
including a prosecution with multiple counts under this section
shall not exceed S10,000,000.

(d) Nothing in this section shall preclude a court from imposing
any other sentences available under this title, including without
limitation a fine up to twice the amount of the gross loss or gross
gain involved in the offense pursuant to 18 U.S.C. section 3571(d).

(e) In determining the amount of the fine, the court shall
consider the factors set forth in 18 U.S.C. sections 3553 and 3572,
and the factors set forth in the guidelines and policy statements
of the United States Sentencing Commission, including -

(1) the need to reflect the seriousness of the offense,
including the harm or loss to the victim and the gain to the
defendant;

(2) whether the defendant previously has been fined for a
similar offense; and

(3) any other pertinent equitable considerations.

(f) A prosecution of an offense under this section may be
commenced any time not later than 7 years after the offense is
committed, plus any additional time otherwise allowed by law.

(g)(1) In special circumstances and in his or her sole
discretion, the Attorney General is authorized to make payments
from funds appropriated to the Department of Justice to persons who
furnish information relating to a possible prosecution under this
section. The amount of such payment shall not exceed $250,000.
Upon application by the Attorney General, the court may order that
the Department shall be reimbursed for a payment from a criminal
fine imposed under this section.

(2) An individual is not eligible for such a payment if -

(A) that individual is an officer or employee of a Government

agency who furnishes information or renders service in the
performance of official duties;

(B) that individual failed to furnish the information to the
individual's employer prior to furnishing it to law enforcement
authorities, unless the court determines the individual has
justifiable reasons for that failure;

(C) the furnished information is based upon public disclosure
of allegations or transactions in a criminal, civil, or
administrative hearing, in a congressional, administrative, or
GAO report, hearing, audit or investigation, or from the news
media unless the person is the original source of the
information. For the purposes of this subsection, "original
source" means an individual who has direct and independent
knowledge of the information on which the allegations are based
and has voluntarily provided the information to the Government;
or

(D) that individual participated in the violation of this
section with respect to which such payment would be made.

(3) The failure of the Attorney General to authorize a payment
shall not be subject to judicial review.

(h) Any individual who -

(1) is discharged, demoted, suspended, threatened, harassed, or
in any other manner discriminated against in the terms and
conditions of employment by an employer because of lawful acts
done by the employee on behalf of the employee or others in
furtherance of a prosecution under this section (including
investigation for, initiation of, testimony for, or assistance in
such prosecution), and

(2) was not a participant in the unlawful activity that is the
subject of said prosecution, may, in a civil action, obtain all
relief necessary to make such individual whole. Such relief
shall include reinstatement with the same seniority status such
individual would have had but for the discrimination, 2 times the
amount of back pay, interest on the back pay, and compensation
for any special damages sustained as a result of the
discrimination, including litigation costs and reasonable
attorney's fees.

U.S. Code as of: 01/06/03 Section 1003. Demands against the United States

Whoever knowingly and fraudulently demands or endeavors to obtain
any share or sum in the public stocks of the United States, or to
have any part thereof transferred, assigned, sold, or conveyed, or
to have any annuity, dividend, pension, wages, gratuity, or other
debt due from the United States, or any part thereof, received, or
paid by virtue of any false, forged, or counterfeited power of
attorney, authority, or instrument, shall be fined under this title
or imprisoned not more than five years, or both; but if the sum or
value so obtained or attempted to be obtained does not exceed
$1,000, he shall be fined under this title or imprisoned not more
than one year, or both.

U.S. Code as of: 01/06/03 Section 371. Conspiracy to commit offense or to defraud United States

If two or more persons conspire either to commit any offense
against the United States, or to defraud the United States, or any
agency thereof in any manner or for any purpose, and one or more of
such persons do any act to effect the object of the conspiracy,
each shall be fined under this title or imprisoned not more than
five years, or both.
    If, however, the offense, the commission of which is the object
of the conspiracy, is a misdemeanor only, the punishment for such
conspiracy shall not exceed the maximum punishment provided for
such misdemeanor.

Chapter 33
Section 1634 - Proof of Petition by Sworn Evidence.

The material allegations of the petition shall be sustained by sworn evidence, and the prayer of
the petition shall be granted unless the court or judge finds that the change is sought for an illegal
or fraudulent purpose, or that a material allegation in the petition is false.

Section 2802 - Hearsay Rule

Hearsay is not admissible except as otherwise provided by an act of the Legislature.

Section 15.26 - False Reports or Statements - Penalty

Any individual holding a certificate or license who knowingly falsifies any report or statement
bearing on any attestation, investigation, or audit made by the individual or subject to the
individual's direction shall be guilty of a felony, and upon conviction shall be punishable by
imprisonment for a period of not more than one (1) year, or by a fine of not more than Twenty-
five Thousand Dollars ($25,000.00) per occurrence, or by both such fine and imprisonment.

    12. Section 2611.10 - Opportunity for cross examination

Section 3 - Duties of Attorneys

It is the duty of an attorney and counselor:
First. To maintain, while in the presence of the courts of justice, or in the presence of judicial
officers engaged in the discharge of judicial duties, the respect due to the said courts and judicial
officers, and at all times to obey all lawful orders and writs of the court.
Second. To counsel and maintain no actions, proceedings or defenses, except those which appear
to him legal and just, except the defense of a person charged with a public offense.
Third. To employ for the purpose of maintaining the causes confided to him such means only as
are consistent with truth, and never to seek to mislead the judges by any artifice or false
statements of facts or law.
Fourth. To maintain inviolate the confidence, and, at any peril to himself, to preserve the secrets
of his client.
Fifth. To abstain from all offensive personalities, and to advance no fact prejudicial to the honor
or reputation of a party or witness unless required by the justice of the cause with which he is
charged.
Sixth. Not to encourage either the commencement or continuance of an action or proceeding
from motive of passion or interest.

Seventh. Never to reject for any consideration personal to himself the cause of the defenseless or the oppressed.

The on going kidnapping for extortion and fraud as every document and action built upon a fraud becomes fraud and all who have a meeting of minds in furtherance of the conspiracy effectively join it and are accountably for the crimes of all other conspirators, in including judges action without jurisdiction and in violation of states or federal law or any decision made by Our Supreme Court. Section Amendment 5 - "Grand Jury, Double Jeopardy, self-incrimination, Due Process (1791)"

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Section Amendment 6 - Criminal Prosecutions - Jury Trial -- Right to Confront and to Counsel (1791)

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Code as of: 01/06/03 Section 241. Conspiracy against rights

   If two or more persons conspire to injure, oppress, threaten, or
intimidate any person in any State, Territory, Commonwealth,
Possession, or District in the free exercise or enjoyment of any
right or privilege secured to him by the Constitution or laws of
the United States, or because of his having so exercised the same;
or
   If two or more persons go in disguise on the highway, or on the
premises of another, with intent to prevent or hinder his free
exercise or enjoyment of any right or privilege so secured -
   They shall be fined under this title or imprisoned not more than
ten years, or both; and if death results from the acts committed in
violation of this section or if such acts include kidnapping or an
attempt to kidnap, aggravated sexual abuse or an attempt to commit
aggravated sexual abuse, or an attempt to kill, they shall be fined
under this title or imprisoned for any term of years or for life,
or both, or may be sentenced to death.

Section 242. Deprivation of rights under color of law

   Whoever, under color of any law, statute, ordinance, regulation,
or custom, willfully subjects any person in any State, Territory,
Commonwealth, Possession, or District to the deprivation of any
rights, privileges, or immunities secured or protected by the

Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

U.S. Code as of: 01/22/02 Section 14141. Cause of action

(a) Unlawful conduct
  It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.
(b) Civil action by Attorney General
  Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1) (FOOTNOTE 1) has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

  (FOOTNOTE 1) So in original.  Probably should be "subsection (a) of this section"

Section 2104 - Rulings on Evidence

A. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and:
1. If the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
2. If the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.
B. The court may add any statement which shows the character of the evidence, the form in which it was offered, the objection made and the ruling thereon. It may direct the making of an offer in question and answer form.
C. In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being presented to the jury by any means, including making statements or offers of proof or asking questions within the hearing of the jury.

D. Nothing in this section precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.
Laws 1978, c. 285, § 104, eff. Oct

Section 2602 - Lack of Personal Knowledge

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony . This rule is subject to the provisions of Section of this title.

Section 2608 - Evidence of Character and Conduct of Witness

A. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, subject to these limitations:
1. The evidence may refer only to character for truthfulness or untruthfulness; and
2. Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked.
B. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in Section of this title, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness if they:
1. Concern the witness's character for truthfulness or untruthfulness;
2. Concern the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
C. The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused or the witness's privilege against self-incrimination when examined with respect to matters which relate only to credibility.

Added by Laws 1984
Section 7004-3.2 - Rules, Regulations, Policies and Procedures Regarding Children in Department Custody

A. The Commission for Human Services shall promulgate written rules, outline policies and procedures governing the operation of those facilities operated with the Department of Human Services wherein children may be housed. Said policies and procedures shall include, but not be limited to, standards of cleanliness, temperature and lighting, availability of medical and dental care, provision of food, furnishings, clothing and toilet articles, supervision, appropriate and permissible use of restriction and confinement, procedures for enforcing rules of conduct consistent with due process of law and visitation privileges.
B. The policies prescribed shall, at a minimum, ensure that:
1. A child shall not be punished by physical force, deprivation of nutritious meals, deprivation of family visits or solitary confinement;
2. A child shall have the opportunity to participate in physical exercise each day;
3. A child shall be allowed daily access to showers and his own clothing or individualized clothing which is clean;
4. A child shall have constant access to writing materials and may send mail without limitation, censorship or prior reading, and may receive mail without prior reading, except that mail may be opened in the presence of the child, without being read, to inspect for contraband;
5. A child shall have reasonable opportunity to communicate and to visit with his family on a regular basis, and to communicate with persons in the community;
6. A child shall have immediate access to medical care as needed, and shall receive necessary

psychological and psychiatric services;

7. A child in the custody or care of the Department shall be provided access to education including teaching, educational materials and books, provided, that such policies shall provide emphasis upon basic literacy skills, including but not limited to curricula requirements stressing reading, writing, mathematics, science, vocational-technical education, and other courses of instruction designed to assure that such children will be capable of being assimilated into society as productive adults capable of self-support and full participation;

8. A child shall have reasonable access to an attorney upon request;

9. A child shall be afforded a grievance procedure, including an appeal procedure; and

10. A child's mental health needs and mental well-being will be met, protected and served through provision of guidance, counseling and treatment programs, staffed by competent, professionally qualified persons, serving under the supervision of qualified mental health professionals as such term is defined by the Inpatient Mental Health and Substance Abuse Treatment of Minors Act.

C. Any contract or agreement entered into by the Department of Human Services for the residential care and treatment of children in the custody of the Department of Human Services shall provide that the contractor shall comply with the provisions of subsections A and B of this section and the provisions of this part.


Section 7006-1.6 - Adjudicated Deprived Children.

The Department of Human Services shall identify those adjudicated deprived children who have been in the Department's custody for fifteen (15) of the most recent twenty-two (22) months, and who were in out-of-home placement in the Department's custody as of November 17, 1997. The Department shall develop and provide to district attorneys a listing of those cases for which a petition for termination of parental rights should be filed.

The Department of Human Services shall provide to the State Post-adjudication Review Advisory Board a listing of those cases identified in subsection A of this section and a listing of those cases for which the Department has determined that a petition to terminate parental rights is not required based upon the following:

1. The child is being cared for by a relative;

2. The Department has compelling reasons for determining such a filing of termination of parental rights would not be in the best interests of the child; or

3. The state has not provided to the family of the child, consistent with the time period in the state case plan, such services as the state may deem necessary for the safe return of the child to the child's home, if reasonable efforts are required to be made with respect to the child.

1. The State Post-adjudication Review Advisory Board shall disseminate the listings from the Department of Human Services to local post-adjudication review boards for review. In the event that no local post-adjudication review board exists, it shall be the responsibility of the State Post-adjudication Review Advisory Board to provide the means to implement the provisions of subsection B of this section.

2. In those cases where the local post-adjudication review boards or the Board disagree with the Department's determinations, the local post-adjudication review boards or Board shall provide to district attorneys their recommendations of additional cases for which a petition to terminate parental rights should be filed. The Board shall forward a copy of such recommendations to the Department of Human Services.

The Department and district attorneys shall utilize the following timetable for purposes of filing petitions for termination pursuant to this section:

1. Within six (6) months after the end of the 2nd regular Session of the 46th Legislature, not less than one-third N of such cases shall be referred, giving priority to children for whom the permanency plan is adoption and to children who have been in foster care for the greatest length of time;

2. Within twelve (12) months after the end of such 2nd regular Session, not less than two-thirds

(%) of such cases shall be referred; and

3. Within eighteen (18) months after the end of such 2nd regular Session, all of such cases shall be referred.

E). Department of Human Services shall provide to the local post-adjudication review boards or the State Post-adjudication Review Advisory Board any information necessary to effectuate the provisions of this section.

U.S. Code as of: 01/22/02 Section 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**AFFIDAVIT**

Acknowledgment:

STATE OF FLORIDA

_Osceola_ COUNTY

Natural Person, I, Cathy Vitarelli, Pro se and Mother of Jeremiah Bays, sovereign, aggrieved party, and past victim of unlawfully child stealing from Defendants, state to the best of my knowledge and belief the Petition above is Truth. I, Cathy Vitarelli, who executed same by their own free will, on the _14_ day of _October_ 2005.

ERIKA Y. SALGADO
Notary Public, State of Florida
My comm. expires Sept. 11, 2007
No. DD 249121

Signature _____

_____ My Commission Expires: _Sept. 11, 2007_

Notary Public

## CONCLUSION

WHEREFORE, I, Cathy Vitarelli, DEMAND immediate RELEASE of my son Jeremiah Bays, that was kidnapped and/or taken unlawfully by the Defendant(s), AND DEMAND A JURY TRIAL IN THIS SAID CASE. ACTUAL AND PUNITIVE DAMAGES, FOR FRAUD, CONSPIRACY TO COMMIT FRAUD, TREASON, PERJURY AND OBSTRUCTION OF JUSTICE. MALICIOUS PROSECUTION AND VIOLATION OF PROCEDURAL DUE PROCESS. DEMAND OF $ 2,000,000.00 TWO MILLION DOLLARS. I, Cathy Vitarelli, Plaintiff ALSO REQUEST THIS COURT TO TOTALLY LOOK AT THE FACTS IN THIS CASE ALONG WITH CALLING DEFENDANTS TO THE STAND UNDER OATH TO TESTIFY AND CROSS EXAMINATION TO THEIR GUILT. I, Cathy Vitarelli, Plaintiff ALSO REQUEST THIS COURT TO ORDER A FULL FEDERAL INVESTIGATION IN THE DEPARTMENT OF HUMAN SERVICES INTO ALL PARENTAL RIGHTS VIOLATION AND CONSTITUTIONAL RIGHTS. IN ALL PAST STATES COURT ORDERS SO THIS COURT CAN SEE THE MANY ERRORS THAT HAVE BEEN PROMOTED BY SAID DEFENDANTS, OTHERS AND JOHN DOES. ANY OTHER RELIEF THIS COURT FINDS APPROPRIATE INCLUDING ANY FEES, COST IN PROSECUTING THIS CASE.

Respectfully submitted,

Cathy Vitarelli, Pros se
323 Clearwater ln.
Kissimee, FL.   34759
863 427 3642

ERIKA Y. SALGADO
Notary Public, State of Florida
My comm. expires Sept. 11, 2007
No. DD 249121

24